## SCHWARTZ v. HYGO MUSICAL PRODUCTS CO., Inc.

District Court, S. D. New York.

Nov. 4, 1938.

Otto Munk, of New York City (Otto Nordon, of New York City, of counsel), for plaintiff.

Philip Kranzbaum, of New York City, for defendant.

WOOLSEY, District Judge.

My judgment in this cause is for the plaintiff.

I. My subject matter jurisdiction is based on the Patent Law.

II. The plaintiff sues as assignee—under an assignment dated October 25, 1935 —of United States Patent No. 1,665,745, granted to Albion Slayton Lang of Jamaica Plain, Massachusetts, on April 10, 1928 —in pursuance of an application filed December 17, 1926—for a saxophone cord.

III. The plaintiff founds his cause on Claims 2, 3, 4 and 5 of the patent.

These read as follows:

"2. An adjusting member for a saxophone cord, said member having an upper pair of apertures and a lower pair of apertures through which the supporting cord may be threaded with each strand or lead of the cord passing through an aperture of each pair, said member having an additional aperture to which a loop of the cord may be fixedly secured.

"3. An adjusting member for a saxophone cord, said member having an upper pair of apertures and a lower pair of apertures through which the supporting cord may be threaded with each strand or lead of the cord passing through an aperture of each pair, said member having an additional aperture to which a loop of the cord may be fixedly secured, and also having a finger rest extending from one face thereof against which the finger may be placed when the adjusting member is being adjusted, said finger rest preventing

the finger from applying a gripping pressure on the cord.

"4. An adjusting member for a saxophone cord, said member having upper and lower apertures through which the strands or leads of the supporting cord are threaded, said adjusting member having a portion constituting a finger rest against which a person may place his finger when the adjusting member is adjusted, said rest preventing the finger from applying a gripping pressure on the strands.

"5. An adjusting member for a saxophone cord, said member having an upper and a lower pair of apertures through which the two strands or leads of the supporting cord are threaded, and also having a finger rest extending from the front face thereof against which a person may place his finger when the adjusting member is to be adjusted, said rest preventing the finger from applying a gripping pressure on the strands."

In the figures illustrating the arrangement of the cords in the patent, the cords where they pass through the slide cross each other, but in the specifications—page 1, lines 80–83—the patentee indicates that the manner of threading is not of the essence and says that the manner of threading the portions 12 and 13 of the cord through the apertures in the adjusting member 6—namely the slide—may be varied without changing the invention.

IV. The infringement claimed is what is commonly referred to as a "Chinese copy", and there is no question of infringement if the patent be sustained.

V. The defense principally relied on is prior use. That has not been made out to my satisfaction.

In fact I think the evidence falls very short of establishing any possible claim of prior use of the device for which the patent was granted.

VI. I have not been cited to any prior art patents.

The prior art relied on by the defendant is the use of a series of two or three rings or a ferrule—a single little hollow cylinder—as the slide for a saxophone cord, to hold it in position.

I do not think that there was a great deal of invention involved in passing on from the ring or the ferrule by the processes which we have had described to the use of the slides of various constructions.

But all my doubts as to the invention involved in this patent are successfully diluted by two facts:

First, that the Patent Office, a part of the Executive Branch of the Government, after investigation, granted the patent and therefore implicitly held that it involved a patentable invention, and

Second, that after the patented device was put on the market it made a notable commercial success and apparently has practically supplanted all forms of slides theretofore in use.

Real commercial success of an invention—however simple it may seem to be—is, because it is proof from the trade, a better test of the inventive quality involved therein than the attempt of a Judge to create an imaginary man learned in the art and then let his own predilections operate for his creation.

By the narrowest possible legal margin, therefore, I think that the validity of the patent is established in this cause.

VII. I am not going to go into any of the details of dates in this cause because under Rules of Civil Procedure, rule 52 (a), 28 U.S.C.A. following section 723c, formerly Equity Rule 70½, 28 U.S.C.A. following section 723, cf. Interstate Circuit, Inc., v. United States, 304 U.S. 55, 56, 57, 58 S.Ct. 768, 82 L.Ed. 1146, findings of fact and conclusions of law separately numbered are required to be filed in all equity cases. In view of the new Rules I suppose we should now call them all non-jury cases.

Counsel for the plaintiff must, therefore, submit to me through the clerk's office findings of fact and conclusions of law in accordance with the rule just referred to and give five days' notice thereof to counsel for the defendant.

Counsel for the defendant may on the return date of such notice submit suggested findings or, better still, criticisms of the findings of fact and conclusions of law proposed by the plaintiff's counsel.

All proposed findings submitted by either party must be typed in *triple* spacing so that I may conveniently correct them if I wish to do so.

Only the findings of fact and conclusions of law which I make will be filed as part of the record herein.

VIII. After the findings of fact and conclusions of law are signed by me an

interlocutory decree may be submitted through the clerk's office giving the plaintiff the usual injunction, and, if he wishes it, a reference to a master for proof of his damages. The decree will carry costs.

If in fact, as I have been informed, the defendant company in this cause is a bankrupt, and the plaintiff does not wish to pursue the question of damages for the infringement, but merely wishes an injunction to fix his future rights, he may submit, instead of the interlocutory decree above provided for, a final decree embodying the usual injunction and carrying costs.